UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STAR BUICK GMC; <br> STAR BUICK GMC CADILLAC; and <br> STAR PRE-OWNED OF BETHLEHEM, <br> Plaintiffs, <br><br> v. <br><br> SENTRY INSURANCE GROUP, <br> Defendant. | No. 5:20-cv-03023 |

**O P I N I O N**
Motion to Dismiss, ECF No. 16 - GRANTED

**Joseph F. Leeson, Jr.**                                                              **May 26, 2021**
**United States District Judge**

I.     **INTRODUCTION**

Plaintiffs Star Buick GMC, Star Buick GMC Cadillac, and Star Pre-Owned of Bethlehem (collectively "Star Buick") initiated this action against their insurer Defendant Sentry Insurance Group seeking declaratory judgment that Star Buick's insurance policy with Sentry provides coverage for loss of business income due to the suspension of business operations during the COVID-19 pandemic. Sentry has moved to dismiss the Amended Complaint, arguing that no coverage is provided under the unambiguous terms of the policy. For the reasons set forth below, the Motion to Dismiss is granted. The Amended Complaint is dismissed with prejudice.

II.     **BACKGROUND**

According to the Amended Complaint, the factual allegations which are accepted as true for purposes of deciding the Motion to Dismiss, Star Buick owns and operates multiple automobile dealerships throughout Pennsylvania. *See* Am. Compl. ¶ 4, ECF No. 11. On March

20, 2020, Star Buick "shut their doors to customers." *Id.* ¶ 12. The closure occurred the day after the Governor of the Commonwealth of Pennsylvania issued an order prohibiting the operation of businesses that are not life-sustaining. *See* Ex. C, ECF No. 11-3 (Order dated March 19, 2020, and list of business industries). Star Buick's car dealerships were not one of the enumerated life-sustaining businesses that were permitted to continue physical operations. *See id.* and Am. Compl. ¶ 12. The forced suspension of operations of the "entire sales portion of those businesses, representing an overwhelming majority and significant source of revenue," has resulted in substantial losses to Star Buick. Am. Compl. ¶ 58. Star Buick claims that its business suspension and resulting losses were due to the COVID-19 Pandemic and to state orders.[1] *See id.* ¶ 15.

The March 19, 2020 order explained that the World Health Organization ("WHO") and Center for Disease Control ("CDC") had declared COVID-19 a public emergency of international concern and that the U.S. Department of Health and Human Services ("HHS") had declared that COVID-19 creates a public health emergency. *Id.* The order further explained that on March 6, 2020, the Governor had proclaimed the existence of a disaster emergency throughout the Commonwealth. *Id. See also* Ex. B, ECF No. 11-2 (Proclamation of Disaster Emergency). Between the issuance of the Proclamation of Disaster Emergency and the March 19, 2020 order, the World Health Organization ("WHO"), on March 11, 2020, "made the assessment that COVID-19 can be characterized as a pandemic." *See*

---

[1] The Amended Complaint identifies, and attaches copies of, the suspension order dated March 19, 2020, and eight others entered by Pennsylvania Governor Tom Wolf and the Pennsylvania Department of Health relating to the COVID-19 emergency. *See* Compl. ¶¶ 48-54, Exs. B-K, ECF Nos. 11-2 to 11-11 (collectively "the orders").

https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.[2]

At the time of its closure and throughout the suspension of operations,[3] Star Buick had an all-risks business protection policy of insurance with Sentry, which was effective from March 1, 2020, to March 1, 2021 ("the Policy").[4]  *Id.* ¶¶ 18-19.  Star Buick alleges that the Policy provides coverage for its business income losses during the suspension of operations.  *Id.* ¶¶ 13-16.  Star Buick seeks declaratory judgment on numerous issues related thereto.  *See id.* ¶¶ 78-83 and Prayer for Relief.

Sentry has filed a Motion to Dismiss arguing that the Policy does not provide coverage for Star Buick's claimed losses because: (1) Star Buick did not sustain direct physical loss of or damage to property; (2) access to Star Buick's property was not prohibited by civil authority due to damage to other property; and (3) the claims are excluded by the Policy's virus exclusion.  *See* Mot. and Mem., ECF No. 16.  Star Buick opposes the Motion.  *See* Opp. Mot., ECF No. 19; Resp., ECF No. 20.  Star Buick contends that physical loss is not defined in the Policy and is not limited to structural damage, but includes lost operations or inability to access/use the property. *See* Resp. 5-22.  It asserts there has also been damage to nearby properties and the orders prohibit access.  *See id.* 22-25.  Star Buick further argues that the virus exclusion is narrow and

---

[2]     This Court takes judicial notice of the statement made by WHO's director-general at a media briefing on COVID-19.  *See City of Phila. v. Sessions*, No. 17-3894, 2018 U.S. Dist. LEXIS 69082, at *14 (E.D. Pa. Apr. 24, 2018) (concluding that there is substantial precedent for taking judicial notice of public statements made by federal officials); *Prushan v. Select Comfort Retail Corp.*, No. 16-cv-5303, 2017 U.S. Dist. LEXIS 83710, at *8 n.2 (E.D. Pa. May 30, 2017) (taking judicial notice of a public statement made before a United States House of Representatives subcommittee).
[3]     As of the filing of the Amended Complaint, Star Buick's operations were still suspended. *See* Am. Compl. ¶ 13.
[4]     The Policy is attached as an exhibit to the Amended Complaint.  Ex. A, ECF No. 11-1.

does not exclude coverage for lost income resulting from a global pandemic.  *Id.* 26-29.  Sentry filed a reply to these arguments.  *See* Reply, ECF No. 22.  The parties have each provided supplemental authority to the Court.  *See* ECF Nos. 23-24.

## III. STANDARDS OF REVIEW

### A. Motions to Dismiss – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). *See also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic

documents if the complainant's claims are based upon these documents."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "a document integral to or explicitly relied upon in the complaint may be considered" (internal quotations omitted)). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B. Contracts of Insurance Interpretation – Review of Applicable Law

"Under Pennsylvania law, 'the interpretation of a contract of insurance is a matter of law for the courts to decide.'" *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390-91 (3d Cir. 2012) (quoting *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (Pa. 1994)). In interpreting an insurance contract, the court must ascertain the intent of the parties from the language of the policy. *See id.* When the terms in a policy are not defined, they should be construed in accordance with their natural, plain, and ordinary meanings. *See Lititz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 978 (Pa. 2001). "The court should not consider isolated individual terms but should instead consider the entire contractual provision to determine the parties' intent." *Robinson v. Allstate Prop. & Cas. Ins. Co.*, 306 F. Supp. 3d 672, 675 (E.D. Pa. 2018). When the policy language is clear and unambiguous, the court will give effect to that language. *See Squires*, 667 F.3d at 390-91.

"Disagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous." *12th St. Gym v. Gen. Star Indem. Co.*, 93 F.3d 1158, 1165 (3d Cir. 1996) (citing *Vogel v. Berkley*, 511 A.2d 878, 881 (Pa. Super. 1986)). "Ambiguity exists if the contract language is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Whitmore v. Liberty Mut. Fire Ins.*

*Co.*, No. 07-5162, 2008 U.S. Dist. LEXIS 76049, at *9 (E.D. Pa. Sep. 30, 2008) (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)). "[T]he policy language must not be tortured to create ambiguities where none exist." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). When the policy language is ambiguous, it must "'be construed in favor of the insured and against the insurer, the drafter of the agreement.'" *Squires*, 667 F.3d at 391 (quoting *Dorohovich v. W. Am. Ins. Co.*, 589 A.2d 252, 256 (Pa. Super. Ct. 1991)). *See also Indep. Rest. Grp. v. Certain Underwriters at Lloyd's*, No. 20-2365, 2021 U.S. Dist. LEXIS 7256, at *9 n.4 (E.D. Pa. Jan. 14, 2021) (explaining that when a policy is drafted by one party, any ambiguous language is construed against the drafter). As with ambiguities, "exclusions are strictly construed against the insurer." *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998) (citing *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). "[A]n insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009).

"In very limited circumstances, the insured's reasonable expectations may prevail over the clear and unambiguous terms of the contract." *Glat v. Nationwide Mut. Ins. Co.*, No. 20-5271, 2021 U.S. Dist. LEXIS 61613, at *4-5 (E.D. Pa. Mar. 30, 2021) (citations omitted). "[E]ven the most clearly written exclusion will not bind the insured where the insurer or its agent has created in the insured a reasonable expectation of coverage." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997). "The reasonable expectations doctrine was created to protect an insured from an insurer's unilaterally changing the coverage. It requires some affirmative

action by the insurer or its agent that changed the coverage the insured purchased." *Glat*, 2021 U.S. Dist. LEXIS 61613, at *4-5.

## IV. ANALYSIS

There are three Policy provisions relevant to this action:

1. The business income provision. This provision states, in pertinent part, that Sentry "will pay for the actual loss of Business Income you[5] sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'[6]. The 'suspension' must be caused by direct physical loss of or damage to property at premises which are described in the Declarations[7]. . . ." *See* Ex. A at 38.

2. The civil authority provision. In pertinent part, this provision states that "[w]hen a Covered Cause of Loss causes damage to property other than property at the described premises," Sentry "will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss

---

[5] "You" is Star Buick.
[6] "Period of restoration" is defined in the Policy as "the period of time that [b]egins . . . 72 hours after the time of direct physical loss or damage. . .; and [e]nds on the earlier of [t]he date when the property . . . should be repaired, rebuilt or replaced. . .; or . . . is resumed at a new permanent location." Ex. A at 46. "'Period of restoration' does not include any increased period required due to the enforcement of or compliance with any ordinance or law that [r]egulates the construction, use or repair, or requires the tearing down, of any property. . . ." *Id.*
[7] The Declarations list several Star Buick premise addresses and buildings occupied with automobile service/repair shops and distributors/showrooms/stores. *See* Declarations, Ex. A at 7, ECF No. 11-1. There is no dispute in the Motion to Dismiss about the relevant "property."

that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*See* Ex. A at 39.

3. The virus exclusion. This exclusion provides, in pertinent part, that Sentry "will not pay for loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease." *See* Ex. A at 49.

> **A.** **The business income provision does not provide coverage because Star Buick did not sustain direct physical loss of or damage to property.**

The business income provision would only provide coverage for Star Buick's claimed losses if its suspended operations were "caused by direct physical loss of or damage to [its] property." The parties disagree over the meaning of "direct physical loss" and whether this term in the Policy is ambiguous. In the last six months, numerous decisions from within this Circuit have been issued construing this language in connection with insurance claims following business suspensions during the COVID-19 pandemic. These decisions have almost invariably concluded the terms are not ambiguous and there is no insurance coverage for loss of business income. *See, e.g. Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*, No. 20-2171, 2021 U.S. Dist. LEXIS 91960, at *17 (E.D. Pa. May 14, 2021) (citing cases). This Court agrees.

Since the Policy does not define "direct physical loss" it must be construed in accordance with the plain meaning of the words. "'Direct' means 'stemming immediately from a source,' without 'an intervening agency, instrumentality, or influence.'" *Mareik Inc. v. State Farm Fire & Cas. Co.*, No. 20-2744, 2021 U.S. Dist. LEXIS 85859, at *9 (E.D. Pa. May 5, 2021) (quoting Merriam-Webster (2021), available at https://www.merriam-webster.com/dictionary). "'Physical' means 'having material existence; perceptible especially through the senses and

subject to the laws of nature.'" *Id.*[8] After considering the entire business income provision, this Court concludes that the plain meaning of the phrase "direct physical loss of" requires an explicit nexus between the purported loss and the physical condition of the insured property. *See Isaac's Deli, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 5:20-cv-06165, 2021 U.S. Dist. LEXIS 92168, at *11 (E.D. Pa. May 14, 2021). *See also Mareik Inc.*, 2021 U.S. Dist. LEXIS 85859, at *10-11 ("[T]his Court concludes, as other courts have, that the term 'direct physical loss to Covered Property' unambiguously requires some immediate impact on the actual, material premises."); *Tria WS LLC v. Am. Auto. Ins. Co.*, No. 20-4159, 2021 U.S. Dist. LEXIS 60500, at *11 (E.D. Pa. Mar. 30, 2021) (determining that "direct physical loss" "requires that the property be rendered unusable by some physical force").

Star Buick suggests that the mere loss of functionality/use is a covered loss. However, "when modified by the terms 'direct' and 'physical,' the term 'loss' is no longer reasonably susceptible to Plaintiffs' proffered definition." *Id.*[9] *See also Hair Studio 1208, LLC*, 2021 U.S.

---

[8] *See also Kahn v. Pennsylvania National Mutual Casualty Insurance Company*, 2021 U.S. Dist. LEXIS 23090, *13 (M.D. Pa. Feb. 8, 2021) ("The word 'physical'—which modifies both 'loss' and 'damage' in the Business Income provision—means '[o]f, relating to, or involving material things; pertaining to real, tangible objects.' Physical, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added)").

[9] The court explained:
> Cases like this one are being litigated across the country. To try and establish physical loss or damage, business owners seeking coverage for COVID-19-related losses have typically proceeded on one of two theories. The first is the "physical contamination" theory, whereby business owners allege that the virus was physically present on their properties, thus making the insured premises unsafe for use. The second is the "loss of use" theory. This theory is not premised on COVID-19 contamination or any other specific condition of or on the insured premises. Instead, its advocates assert that the significant restrictions imposed by the government on the manner and degree to which business owners may use their premises are sufficient, on their own, to establish "direct physical loss of" property.

*Tria WS LLC*, 2021 U.S. Dist. LEXIS 60500, at *8-9 (commenting the plaintiff was proceeding solely on the "loss of use" theory).

Dist. LEXIS 91960, at *14-16 (concluding that these "words, which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure" (internal quotations omitted)). This Court concludes that loss of use may be covered, but "that loss of use must be tied to a physical condition actually impacting the property." *See SSN Hotel Mgmt., LLC v. Harford Mut. Ins. Co.*, No. 20-6228, 2021 U.S. Dist. LEXIS 68850, at *10-11 (E.D. Pa. Apr. 8, 2021).

This conclusion is consistent with the Policy limitations of recoverable losses to those sustained "due to the necessary 'suspension' of your 'operations' during the 'period of restoration,'" which does not end until the property is "repaired, rebuilt or replaced . . . [or] resumed at a new permanent location." *See* Ex. A at 38, 46. This "period of restoration" provision would be meaningless if the loss had no impact on the physical condition of the property because there would be nothing to remedy through repair, replacement, or relocation. *See Rds Vending Llc v. Union Ins. Co.*, No. 20-3928, 2021 U.S. Dist. LEXIS 91301, at *8-9 (E.D. Pa. May 13, 2021) (holding that "to give meaning to the 'period of restoration' clause, the cause of the loss must be directly associated with the building such that it could be remedied through repair or by moving to a different building"); *Hair Studio 1208, LLC*, 2021 U.S. Dist. LEXIS 91960, at *13-14 (explaining that the "period of restoration" clause amplifies the court's conclusion that mere loss of use of property cannot constitute "direct physical loss"); *SSN Hotel Mgmt., LLC*, 2021 U.S. Dist. LEXIS 68850, at *12-13 (determining that the "period of restoration" limitation indicates that "reading 'direct physical loss of or damage to property' to contemplate mere loss of use is not a sound interpretation of the Policy because it does not make sense reading the contract as a whole").

The decision of Third Circuit Court of Appeals in *Port Authority*, which both parties cite, further supports the Court's conclusions. In *Port Authority*, the court held that "'physical loss or damage' occurs only if an actual release of asbestos fibers from asbestos-containing materials has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility." *Port Auth. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002). The court qualified that "if asbestos is present in components of a structure, but is not in such form or quantity as to make the building unusable, the owner has not suffered a loss. The structure continues to function -- it has not lost its utility." *Port Auth.*, 311 F.3d at 236 ("The mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance."). This standard was reiterated a few years later. *See Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 825-827 (3d Cir. 2005). The circuit court explained that "in a case where sources unnoticeable to the naked eye have allegedly reduced the use of the property to a substantial degree," the question is "whether the functionality of the [insured] property was nearly eliminated or destroyed, or whether their property was made useless or uninhabitable." *Id.* at 827.

Applying these standards and consistent with the almost unanimous decisions out of this district, I find that Star Buick has not plausibly alleged that it suffered a "direct physical loss of or damage to" property. Star Buick concedes its "losses were not caused by a virus, bacterium, or other microorganism." Am. Compl. ¶ 37. Accordingly, the COVID-19 virus cannot be the basis for a physical loss. *See Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, No. 20-2034, 2021 U.S. Dist. LEXIS 81096, at *15 (E.D. Pa. Apr. 28, 2021) (holding that where the

plaintiffs admit the COVID-19 virus was not present at the insured's property, there was no "physical loss"). To the extent Star Buick claims that its losses were due to the COVID-19 pandemic, Star Buick fails to plausibly allege that if suffered a direct physical loss because even if it lost the use of its property, "it was because of the presence of COVID-19 in the community and not from the coronavirus existing within the building." *See Rds Vending Llc*, 2021 U.S. Dist. LEXIS 91301, at *8-9. Further, coverage due to the pandemic does not make sense with the "period of restoration" provision because there is nothing for Star Buick to repair, rebuild, or replace. *See Moody v. Hartford Fin. Grp., Inc.*, No. 20-2856, 2021 U.S. Dist. LEXIS 7264, at *16-18 (E.D. Pa. Jan. 14, 2021) (holding that to the extent there was any actual or threatened coronavirus contamination "cleaning surfaces cannot reasonably be described as repairing, rebuilding, or replacing"). Similarly, there is also no "period of restoration" connected to the orders; rather, once government restrictions are lifted, the dealerships may reopen. *See Hair Studio 1208, LLC*, 2021 U.S. Dist. LEXIS 91960, at *21 (holding that the COVID-19 closure orders did not result in either physical damage or loss because once the orders are lifted, the plaintiff may immediately reopen its business without any "period of restoration"). Although it was the orders, not the pandemic that caused Star Buick to suspend operations, as further evidenced by the fact that the "pandemic" was declared more than a week before Star Buick closed its doors to customers, they too did not physically make the property either uninhabitable or unusable. *See id.* at *20. Therefore, the business income provision does not provide coverage for Star Buick's losses.

> **B.** **The civil authority provision does not provide coverage because Star Buick was not denied access to its property as a result of damage to other property.**

The civil authority provision does not cover Star Buick's purported losses because, for the reasons set forth in Sections A and C of this Opinion, Star Buick does not plausibly allege a

"covered cause of loss." *See* Ex. A at 39; *Isaac's Deli, Inc.*, 2021 U.S. Dist. LEXIS 92168, at *14 (concluding that because the plaintiff did not suffer a direct physical loss during the COVID-19 shutdowns, the plaintiff also failed to allege a "Covered Cause of Loss" so as to invoke the Civil Authority provision). Accordingly, no surrounding[10] property was damaged[11] by the same. *See Shantzer v. Travelers Cas. Ins. Co. of Am.*, No. 20-2093, 2021 U.S. Dist. LEXIS 61627, at *9 (E.D. Pa. Mar. 31, 2021) (denying coverage under the civil authority provision because neither the plaintiff's dental offices nor any surrounding properties were damaged or experienced any physical loss during the COVID-19 suspension); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, No. 20-3198, 2020 U.S. Dist. LEXIS 207892, at *9 (E.D. Pa. Nov. 6, 2020) ("Absent facts of direct physical loss or prohibited access to the property, plaintiff cannot sustain a claim for coverage under the civil authority provision of this policy.").

Moreover, even assuming Star Buick had alleged that it had a covered cause of loss and that a surrounding property had been damaged,[12] the civil authority provision would still not

---

[10] Star Buick also fails to allege that the surrounding properties are within one-mile of its own property. *See Hair Studio 1208, LLC*, 2021 U.S. Dist. LEXIS 91960, at *24 (concluding that the absence of any allegations that any property "within one mile" of the insured premises experienced direct physical loss or direct physical damage is fatal to the claim).

[11] "In ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure." *Port Auth.*, 311 F.3d at 236 (quoting Couch on Insurance § 148:46 (3d ed. 1998)). "Physical damage to a building as an entity by sources unnoticeable to the naked eye must meet a higher threshold." *Id.*

[12] For this assumption to work, the damage must have been caused by something other than the closure orders because the orders themselves are the "actions of civil authority" that prohibit access "as a result of the damage." *See Clear Hearing Sols., LLC v. Cont'l Cas. Co.*, No. 20-3454, 2021 U.S. Dist. LEXIS 7273, at *23 (E.D. Pa. Jan. 14, 2021) ("But as a matter of logic, the civil authority orders that purportedly affected access to Clear Hearing's property cannot have been issued due to loss or damage caused to other property by the same orders."). Notably, however, "fear of the virus in nearby properties does not establish physical damage" for purposes of the civil authority provision. *See Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*, No. 20-2740, 2021 U.S. Dist. LEXIS 15781, at *18 (E.D. Pa. Jan. 27, 2021) (citing "*United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 134 n.8 (2d Cir. 2006) (no civil authority

apply because the orders were not issued "in response to dangerous physical conditions" or to give any civil authority unimpeded access. Rather, the orders were issued, as Star Buick alleges, "to protect the public and minimize the risk and spread of COVID-19 Pandemic." *See* Am. Compl. ¶ 63. *See also Hair Studio 1208, LLC*, 2021 U.S. Dist. LEXIS 91960, at *24-25 (determining that because the closure orders were issued to prevent the spread of the COVID-19 virus to surrounding properties, the claims falls outside the coverage of the civil authority endorsement); *SSN Hotel Mgmt., LLC*, 2021 U.S. Dist. LEXIS 68850, at *14-15 (holding that the plaintiff's losses following forced suspension of business during COVID-19 fell outside the scope of the civil authority provision because the suspension orders "were issued to address the health crisis," not because of damage or direct physical loss to a nearby property or because there was some dangerous physical condition at another nearby property").

For all these reasons, Star Buick cannot plausibly claim that its losses are covered by the civil authority provision.

        **C.**      **The virus exclusion bars recovery for Star Buick's COVID-19 related losses.**

"Numerous courts, applying Pennsylvania law, have thoroughly addressed arguments regarding the Virus Exclusion's applicability to insurance claims based on COVID-19 shutdowns [and] have almost unanimously concluded that the language of the Virus Exclusion unambiguously bars coverage." *Hair Studio 1208, LLC*, 2021 U.S. Dist. LEXIS 91960, at *34 (citing cases). Star Buick's specific argument that the virus exclusion does not exclude coverage for loss caused by a global "pandemic" has also been considered, and rejected, in this district. *See SSN Hotel Mgmt., LLC*, 2021 U.S. Dist. LEXIS 68850, at *15-16 (rejecting the plaintiffs'

---

coverage for airline following airport shutdown in response to September 11 attacks because order was based on 'fears of future attacks' rather than 'direct result of damage')").

contention that the virus exclusion "cannot be read to contemplate the loss or damage caused by a pandemic as opposed to 'an ordinary virus'"). This Court agrees with those decisions.

Under the plain language of the exclusion, coverage is not provided for loss "resulting from any virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease." Ex. A at 49. Star Buick alleges that its "operations have been, and continue to be, suspended and threatened by the novel Coronavirus SARS-Co-V-2, which causes the infectious disease, COVID-19." Am. Compl. ¶ 13 (emphasis added). The virus exclusion therefore unambiguously applies to COVID-19. "Though the word 'pandemic' is not used in the Policy, there is no reasonable basis to find a 'pandemic exception' within the plain meaning of this express exclusion." *Mareik Inc.*, 2021 U.S. Dist. LEXIS 85859, at *14 (quoting *Lang v. Meske*, 850 A.2d 737, 740 (Pa. Super. Ct. 2004)).

Assuming that Star Buick's losses were covered under either the business income or civil authority provision, the virus exclusion would nevertheless bar recovery.

### D. Star Buick's reasonable expectation allegations do not save its claims, nor is discovery warranted.

Although not separately presented in opposition to the Motion to Dismiss, Star Buick alleged in the Amended Complaint that it had a reasonable expectation that the Policy provided coverage for losses suffered when its business operations were suspended. *See* Am. Compl. ¶¶ 21-34. However, because the Policy is unambiguous, for the reasons discussed herein, Star Buick's expectations of coverage were not reasonable. *See Fuel Recharge Yourself, Inc. v. AMCO Ins. Co.*, No. 20-4477, 2021 U.S. Dist. LEXIS 26173, at *11-12 (E.D. Pa. Feb. 11, 2021) ("Because I have concluded that the policy provisions at issue unambiguously preclude coverage, I cannot find that Plaintiff's 'reasonable expectations [of coverage during the COVID-19 suspensions] were frustrated'"). Moreover, there are no allegations in the Amended

Complaint that Sentry unilaterally changed coverage. To the contrary, Star Buick contends that the Policy is derived from standardized language. *See* Am. Compl. ¶¶ 23, 25. *See also Glat*, 2021 U.S. Dist. LEXIS 61613, at *17 (rejecting the plaintiff's argument (that because it had no opportunity to negotiate the terms of its policy its reasonable expectations of coverage during the COVID-19 suspension should override the policy language) because there were no allegations that the defendant "deceived it or unilaterally changed the policy" and the policy's terms were clear and unambiguous). There are also no allegations that Sentry engaged in any deceptive conduct or made any representations that coverage was provided for the losses. *See Moody*, 2021 U.S. Dist. LEXIS 7264, at *19-21 (rejecting the plaintiff's reasonable expectations arguments because although the plaintiff "alleges that it sought coverage for business interruption losses, it points to no facts that it actually applied and paid for a wholly different kind of policy than what it received[, n]or does it allege any affirmative representation by [the defendants] that . . . constitute a reason to set aside the unambiguous language of the property insurance policy"). The only allegations pertain to Star Buick's own expectations and to Sentry's failure to correct any misunderstanding, of which Sentry may have been unaware.[13] This doctrine cannot save Star Buick's claims.

Considering the unambiguous terms of the Policy, there is no basis to allow discovery. *See Lansdale 329 Prop, LLC*, 2021 U.S. Dist. LEXIS 81096, at *33-34 (concluding that the plaintiffs failed to "plausibly plead that they reasonably expected coverage of the losses at issue" and refusing to allow an amendment or permit discovery); *Moody*, 2021 U.S. Dist. LEXIS 7264, at *29-30 (concluding that "no amount of discovery" would allow the plaintiff "to escape the

---

[13]  Notably, the Policy was effective March 1, 2020, weeks before the coronavirus pandemic was declared or any closures ordered. *See* Am. Compl. ¶ 18.

applicability of the plain language of the Virus Exclusion [a]nd even if it could, that discovery would not alter the fact that [the plaintiff] has not and cannot state a claim for relief under the Policy's affirmative grant of coverage").

Finally, although not specifically requested, leave to file a second amended complaint is denied because it would be both futile and inequitable. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (Where "a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."); *Moody*, 2021 U.S. Dist. LEXIS 7264, at *34-35 (refusing to allow leave to amend because the business losses suffered when the plaintiff's art gallery was forced to shut down due to the COVID-19 pandemic were not covered under the policy).

## V. CONCLUSION

The instant claims are not unfamiliar in recent months. This Court agrees with the almost unanimous decisions in this district that the all-risks Policy at issue does not provide coverage for the business income losses Star Buick sustained while its operations were suspended following the Governor's March 19, 2020 order in response to the COVID-19 pandemic. The unambiguous Policy terms do not provide coverage under the business income or civil authority provision. Even if they did, the virus exclusion would bar recovery. The Motion to Dismiss is granted. The Amended Complaint is dismissed with prejudice.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge